UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
AMENDED CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 14-01391-JGB (SPx) | Date | March 10, 2015 |
| Title | *Fair Housing Council of Riverside County, Inc., et al. v. City of Riverside* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:   **Order: (1) GRANTING IN PART and DENYING IN PART Plaintiffs' Motion for Leave to Amend (Doc. No. 24); (2) VACATING the March 16, 2015 Hearing (IN CHAMBERS)**

Before the Court is Plaintiffs' Motion for Leave to File an Amended Complaint. The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After reviewing and considering all papers filed in support of and in opposition to the Motion, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Leave to Amend. The March 16, 2015 hearing is VACATED.

## I.  BACKGROUND

### A. Procedural History

On July 8, 2014, Plaintiffs Michael Beaumier, Denise Rainey, Christine Gladysz, Abraham Sanchez, and Fair Housing Council of Riverside County, Inc. (collectively "Plaintiffs") filed their initial complaint ("Complaint") against Defendant City of Riverside ("Defendant" or "City"). (Compl., Doc. No. 1.) The Complaint alleges that Defendant's adoption and enforcement of Ordinance 7222 – the "Room Rental Ordinance" – violates fair housing laws as well as certain constitutional provisions. (Compl. ¶¶ 68-83.) Specifically, the Complaint alleges causes of action under:

(1) the Federal Fair Housing Act (42 U.S.C. §§ 3601) for discriminatory housing practices;
(2) 42 U.S.C. § 1983, for violations of the First, Fourth, and Fourteenth Amendments;

    (3) 42 U.S.C. § 1983, for failure to affirmatively further fair housing as required by the Housing and Community Development Act, 42 U.S.C. §5304(b)(2) and the Fair Housing Act, 42 U.S.C. § 3608(e) ;
    (4) 42 U.S.C. § 1985, for conspiracy to deprive Plaintiffs of equal protection of the laws;
    (5) 42 U.S.C. § 1986, for failing to prevent deprivation of Plaintiffs' rights to equal protection of the laws;
    (6) the California Fair Employment and Housing Act (Government Code §§ 12926,12927, and 12955 et seq.) for unlawful housing practices;
    (7) Article 1, §§ 1 and 7 of the California Constitution, for invasion of the right to privacy
    (8) California Government Code §§ 11135 and 65008, for discrimination in the use of Defendant's zoning powers

(Id.) Defendant answered on September 5, 2014. (Doc. No. 12.)

On February 16, 2015, Plaintiffs filed a Motion for Leave to File a First Amended Complaint. ("Motion," Doc. No. 24.) Defendant filed an Opposition on February 23, 2015 ("Opp'n," Doc. No. 27) and Plaintiffs replied on March 2, 2015. ("Reply," Doc. 29.)

Plaintiffs' proposed First Amended Complaint ("FAC") adds three plaintiffs – Benham Darvish, Gloria Quiroz, and Jeffrey Villegas – and provides factual allegations as to each new plaintiff. (FAC ¶¶ 9-11, 31-38, 45-57.) The proposed FAC also pleads new claims under the California Unruh and Bane Civil Rights Acts. (Id. ¶¶ 94-95.) Defendant opposes only the addition of the two new claims. (Opp'n at 1.) Defendant contends that the addition of the new claims is futile, as they would be subject to a motion to dismiss. (Id. at 3.)

### B. Factual Allegations[1]

The Zoning Code of the City of Riverside (the "Zoning Code") classifies and regulates land uses and structures within the City. (Compl. ¶ 15.) On August 13, 2013, the City adopted Ordinance 7222, entitled the "Room Rental Ordinance", which amended the Zoning Code to restrict the occupancy of single-family dwellings located in certain residential districts. (Id. ¶ 21.) Ordinance 7222 (the "Ordinance") provides that no more than two renters may occupy a dwelling located in the R-1, RR, and RE residential districts.[2] (Id. ¶ 22) Up to four renters are

---

[1] While not a motion to dismiss, the same legal standard applies to Defendant's contention that amendment would be futile; thus, the Court takes the factual allegations – either from the Complaint or proposed FAC – as true. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008) (when ruling on a motion to dismiss, court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party").

[2] R-1 districts are commonly referred to as single-family residential districts, and allow for one single-family dwelling on lots ranging from 7,000 square feet (R-1-7000) to 13,000 square feet (R-1-13000). (Compl. ¶ 16.) In RE districts, known as residential estate districts, each single-family dwelling must be built on lots of at least one acre. (Id.) RR districts, or rural residential districts, are made up of dwellings on lots of at least 20,000 square feet. (Id.)

allowed if the dwelling's owner obtains a Room Rental Permit from the City and complies with several other conditions.  (Id.)

Following adoption of the Ordinance, the City launched a campaign to promote code enforcement.  (Id. ¶ 27.)  City officials attended neighborhood meetings in R-1, RE, and RR districts, where they encouraged homeowners to report suspected renter households.  (Id.)  Additionally, City code enforcement officials patrolled the specified districts, looking for signs of renters.  (Id. ¶ 27.)  If an official suspected a code violation, the official would visit the house and speak with the person answering the door.  (Id.)  If the occupant stated renters lived in the house, the official would demand entry and inspect the common areas, bedrooms, and garage.  (Id.)  If the official determined that the house held more than the maximum number of renters allowed under the Ordinance, the official would issue a notice and order for violation of the Ordinance.  (Id.)

Between September 9, 2013, and June 16, 2014, the City issued 61 notices, citations, or orders related to violations of the Ordinance.  (Id. ¶ 25.)  The orders threatened "fines up to $1,000 per day and/or other legal action."  (Id.)  The citations imposed fines ranging from $100 to $900. (Id.)

### 1. The Beaumier and Darvish Household

Between 2009 and February 2014, Plaintiffs Michael Beaumier and Benham Darvish (along with three other individuals) rented a single-family dwelling located at 750 Apache Trail.  The residence has five bedrooms, three bathrooms, a full kitchen, a living room, and an attached garage.  (FAC ¶ 31.)  Beaumier, Darvish, and their fellow occupants shared a common lease, divided up chores to maintain the property, shared access to all the common areas, and jointly paid household expenses.  (Id. ¶ 32.)  On February 7, 2014, a uniformed City official knocked on the door and interrogated the answering occupant about the number of people living in the house.  (Id.¶ 33.)  The officer demanded and gained entry into the home, and inspected the downstairs and garage.  (Id.)  One week later, another City official served a notice and order on the house's occupants, which threatened fines and possible criminal prosecution for violating the Ordinance.  (Id. ¶ 34.)  The notice and order gave a compliance deadline of March 2, 2014.  (Id. ¶ 35.)  The house's occupants met and decided that one member of the household would need to move out of the residence.  (Id. ¶ 37.)  Darvish volunteered to move, although he did not want to, so that the household be fined.  (Id.)  He vacated the house on March 1, 2014.

### 2. The Rainey Household

Plaintiff Denise Rainey and her family – two adult daughters, one adult son, and two minor grandchildren – currently live in a townhouse in Riverside.  (Id. ¶ 38.)  However, Rainey seeks to rent a single-family dwelling in a safe neighborhood with access to a private yard where the children can play.  (Id.)  She alleges the Ordinance frustrates her plan to rent such a home.  (Id.)

### 3. The Gladysz Household

Plaintiff Christine Gladysz lives with her two adult daughters and one minor grandchild in an apartment in Riverside. (Id. ¶ 41.) The apartment lacks a private yard as well as a garage, where Gladysz and her family could store their property and cars. (Id.) Gladysz alleges the Ordinance makes it more difficult for her and her family to find a house with a private yard and a garage. (Id.)

### 4. Abraham Sanchez

Plaintiff Abraham Sanchez is a senior at the University of California, Riverside ("UCR"). (Id. ¶ 44.) Although Sanchez presently resides on campus, he would like the opportunity to move with friends into one of the neighborhoods surrounding UCR. (Id.) Sanchez alleges that the Ordinance limits his housing opportunities in these neighborhoods. (Id.)

### 5. The Quiroz Household

Between 2012 and early 2014, Plaintiff Gloria Quiroz and her two minor children occupied a single family dwelling located at 3050 Orange St, within one of the R-1 zoning districts. (Id. ¶ 45.) Quiroz rented the downstairs of the house, which had two bedrooms, while the landlord lived upstairs. (Id.) The house had four bedrooms, two bathrooms, and a sizeable yard. (Id.) On August 31, 2013, the landlord served a thirty-day notice to vacate on Quiroz and her family. The notice explained that Quiroz was being evicted due to the newly passed Ordinance, as the landlord could not take the chance of getting into trouble with the City. (Id. ¶ 47.) After Quiroz left the house, she was unable to secure alternative housing and lived with her children in motels for several months, before ultimately moving to Moreno Valley. (Id. ¶ 48.)

### 6. The Villegas Household

Between 2013 and 2014, Plaintiff Jeffrey Villegas and five of his friends rented a single-family dwelling, located at 818 Spruce Street. (Id. ¶ 49.) The house has two stories, six bedrooms, three bathrooms, a full kitchen, a living room, and an attached garage. (Id.) On November 2, 2013, Jerry Ozeta, a uniformed City code enforcement official, entered onto the property and interrogated Villegas about the number of people occupying the house and the nature of their occupancy. (Id. ¶ 51.) After Villegas explained that he occupied the house with his five roommates, Ozeta stated that only two people could live in the house and that the current occupancy situation violated the Ordinance. (Id.) On November 14, 2014, Ozeta returned and served a notice and order on Villegas and his household. (Id. ¶ 52.) The notice threatened penalties of $500 per day for violation of the Ordinance, and explained that the household needed to either reduce the number of renters to no more than two, or obtain a Room Rental Permit which would allow up to four renters. (Id.)

Villegas advised his landlord of the City's notice. (Id. ¶ 53.) The landlord obtained a Room Rental Permit on November 19, 2013. (Id.) On December 9, 2013, a City code official returned to the house, and threatened fines and penalties for continued violation of the Ordinance. (Id.) The City mailed the landlord a notice of an administrative hearing set for

January 9, 2014.  (Id. ¶ 54.)  On the morning of January 9, a uniformed City official arrived at the house, demanded entry, and conducted a room by room search and inspection, photographing the interior of each household member's bedroom. (Id.)  Later that afternoon, the landlord and code officer Ozeta appeared at the administrative hearing. (Id. ¶ 55.)  The hearing officer ultimately imposed penalties of $500 per day, accruing from November 15, 2013, plus an additional $715.01 administrative cost assessment. (Id.)

Following the administrative hearing, the tenants met and decided that two of their members would need to leave the household. (Id. ¶ 56.)  Villegas remained in the house with three other housemates, where they continued to reside until August 2014, each paying more rent to occupy a home with two empty bedrooms. (Id.)  The City determined that the Ordinance violation had not been corrected until January 24, 2014, and imposed $35,500 in civil penalties on the landlord.  The landlord filed a lawsuit in Riverside Superior Court to contest these penalties, and ultimately reached a settlement agreement requiring him to pay $18,107.25. (Id. ¶ 57.)  Hoping to recoup some of this loss, the landlord demanded that Villegas pay half of the settlement, or $9,050.00. (Id.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Leave to amend is not automatic, however.  The Ninth Circuit considers a motion for leave to amend under five factors:  bad faith, undue delay, prejudice to the opposing party, the futility of amendment, and whether the plaintiff has previously amended his or her complaint.  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

"The party opposing amendment bears the burden of showing prejudice, unfair delay, bad faith, or futility of amendment."  United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co., 2009 WL 650730, at *2 (C.D. Cal. Mar. 12, 2009) (citing Eminence Capital, 316 F.3d at 1052; DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186-87 (9th Cir. 1987)).

Under Rule 15(a)(2), amendment may be futile if the amended pleading would fail to state a claim upon which relief can be granted.  See Blantz v. Cal. Dept. of Corr. & Rehab., 727 F.3d 917, 927 (9th Cir. 2013) (affirming denial without leave to amend because "the new allegations [plaintiff] envisions would merely be additional conclusory allegations of the sort that are insufficient under Iqbal and Twombly"); Sweany v. Ada County, Idaho, 119 F.3d 1385, 1393 (9th Cir. 1997) (explaining futility exists "only if no set of facts can be proved under which the amendment to the pleadings that would constitute a valid and sufficient claim"); see generally J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)).

## II.  DISCUSSION

Plaintiffs' FAC adds three new Plaintiffs and pleads two new claims.  Defendant contests the Motion solely on the basis that the addition of the new claims – for violations of the Bane and Unruh acts – would be futile.  (Opp'n at 3.)  In other words, Defendant argues that Plaintiffs' two newly added claims would be subject to a motion to dismiss.  (Id.)  The Court examines each proposed new claim in turn.

### A.  Plaintiffs' Bane Act Claim

California Civil Code § 52.1 – known as the Bane Civil Rights Act – provides a cause of action for interference with an individual's civil rights.  The statute allows an aggrieved individual to bring a civil action for damages when that person's Constitutional or statutory rights have been interfered with "by threats, intimidation, or coercion" or by attempts to threaten, intimidate, or coerce.  Cal. Civ. Code § 52.1(a)-(b).

To obtain relief under the Bane Act, a plaintiff must prove that a defendant tried to, or did, prevent the plaintiff from doing something that he had the right to do under the law, or to force plaintiff to do something that he was not required to do under the law.  Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007) (citing Jones v. Kmart Corp., 17 Cal.4th at 334, (1998)).  The statute does not require a plaintiff to allege the defendant acted with discriminatory animus or intent.  Venegas v. County of Los Angeles, 32 Cal.4th 820, 841–843 (2004).  A defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion.  Id. at 843.

Defendant first contends that Plaintiffs' allegations are insufficient because they fail to allege any violent acts or threats of violence.  (Opp'n at 3.)  Defendant relies on Judicial Council of California Civil Jury Instruction 3066 ("CACI 3066"), a pattern jury instruction that lays out the elements of a Bane Act violation.  (Id.)  CACI 3066 requires that a defendant either "made threats of violence" or "acted violently."  However, it appears that CACI 3066 improperly includes requirements from the closely related Ralph Act, which expressly requires "violence, or intimidation by threat of violence."  Cal. Civ. Code § 51.7.  The Bane Act itself contains no reference to either.  Thus, it is unsurprising that at least one other district court has not put much stock in CACI 3066.  See Quinn v. Fresno County Sheriff, 2012 WL 6561562, *4 (E.D. Cal. Dec. 14, 2012) (noting error in CACI 3066 and deleting reference to violence or threats of violence).  Moreover, in Venegas, the California Supreme Court upheld a Bane Act claim in spite of the absence of any violence or threat of violence.  32 Cal.4th at 827-828, 843.  Accordingly, Plaintiffs need only allege what the statute requires: intimidation, threats, or coercion.

Defendant next argues that Plaintiff's allegations against the City show "nothing more than [the] City's routine enforcement of its Municipal Code" and do not demonstrate any threats, intimidation, or coercion.  (Motion at 5.)  The Court disagrees.  Plaintiffs allege a Bane Act violation only on behalf of three individuals – Beaumier, Darvish, and Villegas.  (FAC ¶ 97.)  According to the FAC's allegations, City officials arrived at these Plaintiffs' houses without notice, interrogated whomever answered the door, demanded entry, and then conducted

warrantless and intrusive searches of the houses. (Id. ¶¶ 31-33, 49-51.) notably, in Villegas's house, the official allegedly conducted a room by room search, even photographing the interior of each tenant's bedroom. (Id. ¶ 54.) City officials also issued notice and orders threatening severe penalties – up to $1,000 per day – if Plaintiffs did not comply with the Ordinance. (Id. ¶¶ 34-36, 52-53). Taken together, these averments sufficiently allege intimidation and coercion. See Mateos-Sandoval v. Cnty. of Sonoma, 2013 WL 3878181, at *7 (N.D. Cal. July 25, 2013) ("When a Section 52.1 claim is alleged against a government actor, the burden of showing "threats, intimidation or coercion" is minimal") (citing Venegas, 32 Cal.4th at 843).

Accordingly, the Court finds that Plaintiffs' claim under the Bane Act would withstand a motion to dismiss and thus are not futile. The Court GRANTS Plaintiffs leave to amend their Complaint to include a Bane Act cause of action.

**B. Plaintiffs' Unruh Act Claim**

The Unruh Civil Rights Act is a broad anti-discrimination statute that incorporates a wide range of classifications, including "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation." Cal. Civ. Code § 51(b). Moreover, this list is merely illustrative rather than exhaustive. Marina Point, Ltd. v. Wolfson, 30 Cal. 3d 721, 736 (1982) (noting the Act's application to exclusionary policies directed against students, welfare recipients, and those of a particular occupation).

The Unruh Act states that "[a]ll persons . . . are entitled to the full and equal accommodations, advantages . . . or services, in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Defendant contends that as a local government, enacting legislation, it is not a "business establishment," and thus Plaintiffs' putative Unruh Act claim would not survive a motion to dismiss. (Motion at 6.)

Plaintiffs make a persuasive counterargument, relying on Gibson v. County of Riverside, 181 F. Supp. 2d 1057 (C.D. Cal. 2002). Gibson involved a challenge to Riverside County's use of its zoning power to impose age restrictions on residents living in certain areas of the county. 181 F. Supp. 2d at 1060. The court found that the county was subject to Unruh Act liability, and stated "neither the County nor its agents may enforce laws which directly abridge or indirectly abridge the rights afforded by Section 51 of the Unruh Act." Id. at 1093. The court observed that § 51(b) states the scope of the protections afforded under the Act: "all persons" are protected from discrimination "in all business establishments of every kind whatsoever." Id. In other words, § 51(b) does not define who is liable for violations; it merely states where individuals are protected – in business establishments. On the other hand, section 52 of the Unruh Act states that "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable" for damages. Cal. Civ. Code § 52 (a) (emphasis added). This statutory language strongly suggests that liability is not limited to the business establishments themselves, but would also encompass those who aid or incite a denial of rights protected under the Unruh Act. See Gibson, 181 F. Supp. 2d at 1090 ("The text of Section 52 makes clear that persons and entities who are not themselves 'business establishments' are subject to the prohibitions imposed by Section 51.")

      However, Defendant presents an apposite California Court of Appeal decision to the contrary.  In Qualified Patients Ass'n v. City of Anaheim, 187 Cal. App. 4th 734 (2010), the Court of Appeal examined an Anaheim city ordinance imposing penalties for the operation of a medical marijuana dispensary.  187 Cal. App. 4th at 741-742.  The appellate court upheld the lower court's decision, stating that the "trial court correctly concluded the Unruh Act does not apply to the city's enactment of legislation."  Id. at 764.  The court explained that "because a city enacting legislation is not functioning as a 'business establishment' we conclude the Unruh Act does not embrace plaintiffs' claims against the city for discrimination based on a disability or medical condition…"  Id.  Furthermore, the court noted that it was not persuaded by Gibson's analysis.  Id.  In sum, while the statutory language seems at odds with such an interpretation, the Qualified Patients court concluded that the Unruh Act may only apply to business establishments, and that a city enacting legislation does not fall under this definition.

      While the Court finds Gibson's analysis more persuasive than Qualified Patients', the Court is bound by the directly on point California Court of Appeal decision.  See Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 994 (9th Cir. 2007).  (When "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.")

      Accordingly, the Court finds the addition of an Unruh Act claim would be futile, and DENIES Plaintiffs' Motion, insofar as it concerns this claim.

### III. CONCLUSION

      For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Leave to File an Amended Complaint.  Plaintiffs shall file their First Amended Complaint by Monday, March 16, 2015.  The March 16, 2015 hearing is VACATED.

      **IT IS SO ORDERED.**